# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs October 30, 2001 at Knoxville

## STATE OF TENNESSEE v. EDDIE MEDLOCK

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-11093, 94     Joseph B. Dailey, Judge**

---

**No. W2000-03009-CCA-R3-CD - Filed January 16, 2002**

---

The Appellant, Eddie Medlock, was convicted after a trial by jury of two counts of aggravated rape and two counts of especially aggravated kidnapping, class A felonies. The Appellant, a Range III persistent offender, was sentenced to sixty years on each count. The Criminal Court of Shelby County ordered the rape counts to run concurrent, the kidnapping counts to run concurrent, and the rape and kidnapping counts to run consecutively to each other, for an effective one-hundred and twenty-year sentence. On appeal, Medlock argues that: (1) his multiple punishments for especially aggravated kidnapping and multiple punishments for aggravated rape violated double jeopardy principles; (2) his convictions for especially aggravated kidnapping violated due process principles of *State v. Anthony*; (3) the evidence was insufficient to sustain his convictions; (4) the trial court failed to articulate its findings of applicable enhancing factors at sentencing; and (5) consecutive sentencing was improper. After review, we find Medlock's multiple convictions for especially aggravated kidnapping constitute double jeopardy. Accordingly, one count of especially aggravated kidnapping is reversed and dismissed; the sentences and convictions for the remaining two counts of aggravated rape and one count of especially aggravated kidnapping are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Reversed and Dismissed in Part; Affirmed in Part.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

AC Wharton, Jr., Public Defender; Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee, for the Appellant, Eddie Medlock.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Peter M. Coughlan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

The victim, Stephanie Readus, and the Appellant ended their romantic relationship in July of 1999. On July 31, 1999, Ms. Readus, believing the Appellant would be at work, returned to the duplex where she and the Appellant lived to retrieve the rest of her personal belongings. As Ms. Readus was packing her clothing, the Appellant entered the residence. Once inside the bedroom, the Appellant, who smelled of alcohol, accused Ms. Readus of "being with someone else," and called her a "whore" and a "bitch." He then began hitting Ms. Readus with his fists and kicking her, while she pleaded and screamed for him to stop. He also whipped her with an extension cord which he pulled from the television set. During the beating, her clothes were "snatched" off.

Thereafter, Ms. Readus was dragged by her hair from the bedroom to the kitchen. The Appellant tied her hands behind her back, and "he got two chairs from the kitchen table and he had opened [her] legs and tied [her] legs to each chair." Her legs were tied with the extension cord earlier used to whip her, and her hands were tied with a rope. While she was tied up, he also beat her with a board, and held his "work" boots on her throat. Ms. Readus testified that,

> He was steady drinking. He had lit a cigarette, and then he went in the other room and got a clothes hanger out of the closet, and he came back in the kitchen, and he turned the stove on, and started untwisting the clothes hanger, and he made it straight, and then he started twisting it up, and he turned the stove on and struck the clothes hanger on the stove and let it get hot, and then he had got some rubbing alcohol, and then he was steady drinking and smoking cigarettes, and then he started saying, "Bitch, I'm going to stick this so nobody won't want you," and he took the clothes hanger from the stove, and he stuck it between my legs while he was pouring alcohol [into my vagina].

The Appellant held a towel on Ms. Readus' face to quiet her screams while he raped her with the heated coat hanger. After the coat hanger was removed from her vagina, the Appellant said, "[b]itch, that's what you get. You made me do these things to you."

Ms. Readus was then untied from the chairs, dragged into the bedroom again by her hair, and thrown onto the bed. At trial, she testified,

> Q. And what happened once he put you up on the bed – or threw you up on the bed?
> A. He forced me to have – forced me to have sex with him.
> Q. Your hands were still tied up?
> A. Yes.
> Q. How did he force you to have sex with him? What did he do?
> A. He opened my legs up. . . .

A. He pulled his pants down, and he stuck his thing inside me. He said, "Bitch, open your legs," and I started screaming. I was telling him to stop. . . .

Q. You were hollering. Did he make any threats towards you this time?
A. He was steady saying, "Bitch, shut up or I'll kill you."

Before leaving the duplex, the Appellant noticed blood on the sheets. He removed Ms. Readus from the bed and proceeded to wash the sheets. Once the Appellant finished washing the sheets, he locked the door and left the residence. Ms. Readus remained tied up for "thirty/forty-five minutes to an hour." After she untied herself, she crawled to the living room window. She was unable to exit the home because the Appellant had previously taken her keys, and the windows were barred. Ms. Readus waited for about thirty minutes at the window until she saw her neighbor, Eva Tillman, who phoned 911. Upon arrival at the home, the police were unable to open the door, so the firemen were called to break down the door.

Ms. Readus was taken to the hospital where she received extensive medical treatment. The nurse, Sally DiScenza, testified that upon Ms. Readus' arrival at the hospital, her vagina was very red, and had "a lot of drainage as you get . . . when skin is burned, and you have the drainage from the cell destruction and when . . . bacteria is introduced." Because Ms. Readus was in extreme pain, a speculum exam was performed very quickly. Consequently, no forensic evidence was obtained. Ms. Discenza also observed Ms. Readus' many other bruises and wounds. Ms. Readus suffered permanent scarring from the incident.

On September 23, 1999, the Appellant was indicted for two counts of aggravated rape and two counts of especially aggravated kidnapping. After a trial by jury, he was found guilty on all counts, and sentenced to an effective one-hundred and twenty-year sentence.

## ANALYSIS

### I. Double Jeopardy

First, the Appellant argues that "the verdict of the jury was improper in that dual findings of guilt on both counts of each indictment violate double jeopardy principles." He asserts that the trial court should have dismissed or vacated one count of each indictment or merged the two counts of each indictment into one judgment of conviction because "verdicts on both counts . . . allow[ed] the State to create separate offenses from one act."

The issue of multiple punishments arising from a single criminal episode was addressed by our supreme court in *State v. Phillips*, 924 S.W.2d 662 (Tenn. 1996). To determine whether offenses are multiplicitous, several general principles must be considered:

(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

(2) If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

(3) Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Id.* at 665. Additionally, the court, in *Phillips*, provided several factors for guidance in determining whether multiple convictions violate double jeopardy, *i.e.*:

(1) The nature of the act;
(2) The area of the victim's body invaded by the sexually assaultive behavior;
(3) The time elapsed between the discrete conduct;
(4) The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and
(5) The cumulative punishment.

*Id.*

## A.      Especially Aggravated Kidnapping

The State concedes that "separate convictions for kidnapping are not warranted because the kidnapping was a continuous, unbroken course of conduct." We agree. The Appellant was indicted for two counts of especially aggravated kidnapping. Especially aggravated kidnapping is false imprisonment accomplished with a deadly weapon, or where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-305(a) (1), (4) (1997). False imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302 (1997). In the present case, only one period of continuous unlawful confinement occurred. The victims confinement began when she was dragged to the kitchen where her hands and legs were tied and continued until she was extricated from the residence. A single, wrongful act may not furnish the basis for more than one criminal prosecution. *Phillips*, 424 S.W.2d at 665. Therefore, we vacate one count of the Appellant's convictions for especially aggravated kidnapping.[1]

## B.      Aggravated Rape

Again, with respect to his two convictions for aggravated rape, the Appellant contends that his conduct may not be divided to permit convictions for separate crimes. In support of this argument, the Appellant maintains that the State chose to charge him not with two separate crimes

---

[1]The Appellant was charged in Indictment No. 99-11093 with two counts of especially aggravated kidnapping: Count 1 charged unlawful confinement of the victim accomplished with a deadly weapon, "to-wit: A cord, a hanger and a piece of wood," Tenn. Code Ann. § 39-13-305(a)(1) (1997); and Count 2 charged unlawful confinement resulting in "serious bodily injury" to the victim, Tenn. Code Ann. § 39-13-305(a)(2) (1997). For whatever reason, the record reflects that the trial court charged the jury only as to a violation of Tennessee Code Annotated § 39-13-305(a)(1). Accordingly, we find it appropriate to dismiss Count 2 upon grounds of double jeopardy.

of aggravated rape but, rather, one count of rape which charged alternative theories of criminal liability.

The indictment for aggravated rape alleged as follows:

**Count One:** The Appellant "did unlawfully and intentionally sexually penetrate and cause bodily injury" to the victim.
**Count Two:** The Appellant "did unlawfully, intentionally, and forcibly, while armed with a weapon, to-wit: a cord, a hanger, and a piece of wood, sexually penetrate" the victim.

It is undisputed that the indictment charges two different theories of criminal liability for aggravated rape. However, the question of whether the State sought prosecution for one count of aggravated rape under alternative theories or two counts under separate theories requires examination of the record, particularly the State's opening statement and its closing argument at trial. We are unable to resort to these specific portions of the trial proceedings because they were not included by the Appellant in the record on appeal. When the record fails to contain proceedings relevant to an issue presented for review, we are precluded from considering the merits of the issue. *See* Tenn. R. App. P. 24(b).

"A trial court should instruct a jury to render a verdict as to each count of a multiple count indictment which requires specific jury findings on different theories . . . and if the jury does return a verdict of guilt on more than one theory . . . the court may merge the offenses and impose a single judgment of conviction." *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997); *see also State v. Howard*, 30 S.W.3d 271, 274 n. 4 (Tenn. 2000). In the absence of proof in the record indicating otherwise, we are required to presume that the trial court performed this function and found, as argued by the State on appeal, that the indictment charged two separate counts of aggravated rape. *See State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993).

After review of the proof at trial, we conclude that the conduct at issue established two acts of vaginal sexual penetration, *i.e.*, one with a coat hanger and one penile. The testimony of the victim relating to the separate counts provides that the Appellant tied her up in the kitchen, and sexually penetrated her with a heated coat hanger. He then dragged her into the bedroom, where he sexually penetrated her with his penis. Each act was of a different nature, and occurred in different rooms of the home. While the penetrations invaded the same body area of the victim, more than a few minutes elapsed between the two penetrations. We conclude that the space of time between the penetrations supports a separate and "newly formed intent" to commit rape. *Phillips*, 924 S.W.2d at 665. Accordingly, we find that the two vaginal penetrations of the victim were separate and distinct offenses. As such, the Appellant's convictions for aggravated rape do not violate protections against double jeopardy.

## II. Separate Conviction for Especially Aggravated Kidnapping

The Appellant next argues that his especially aggravated kidnapping conviction violates due process and the mandate of *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991), because any confinement of the victim was essentially incidental to the primary purpose of committing the aggravated rapes. Specifically, he asks this court to reverse his convictions for especially aggravated kidnapping.

The appellate courts of this state have recognized that inherent in every assault, robbery, and, rape is a period of confinement or restraint. Thus, the courts are left to determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not ... sufficient to support a separate conviction for kidnapping . . . in and of itself. . . ." *Id.* (citation omitted). The focus of an *Anthony* inquiry is upon the "purpose of the removal or confinement and not the distance or duration." *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). If the purpose of the removal or confinement was not necessary for the commission of the underlying felony, the kidnapping is not incidental to the other offense. *Id.* If the "movement or confinement was beyond that necessary to consummate the [underlying offense,] . . . the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* (citing *Anthony*, 817 S.W.2d at 306). Affirmative answers to these inquiries support affirmance of a contemporaneous kidnapping. *See, e.g., Dixon*, 957 S.W.2d 532.

When the Appellant left the dwelling, the victim was bound and suffering from severe injuries. The Appellant knew the victim would be unable to exit because the doors were dead-bolted, he had taken her keys, and the windows were barred. Applying the foregoing principles, we first conclude that the purpose of the confinement was not necessary for the commission of the aggravated rapes. Second, we find that the additional confinement prevented the victim from summoning help, lessened the Appellant's risk of detection, and created a significant danger or increased the victim's risk of harm. Accordingly, separate convictions for especially aggravated kidnapping and aggravated rape in the case before us are proper.

### III. Sufficiency of the Evidence

The Appellant contends that his convictions for aggravated rape and especially aggravated kidnapping must be reversed because "the state has failed to carry its burden of proving beyond a reasonable doubt that the appellant is guilty of especially aggravated kidnapping and aggravated rape, and that . . . the evidence is insufficient to support the conviction." We disagree.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented

at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). In *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), this court held these rules applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.

Tennessee Code Annotated § 39-13-502(a) (1997) defines aggravated rape as the "unlawful sexual penetration of a victim by the defendant ... accompanied by any of the following circumstances: (1) [f]orce or coercion is used to accomplish the act and the defendant is armed with a weapon . . ., or (2) [t]he defendant causes bodily injury to the victim." The victim identified the Appellant as the man who raped and beat her. The Appellant forced a heated coat hanger into the vagina of Ms. Readus while pouring alcohol into the vaginal area. He then sexually penetrated her with his penis. These facts support the jury's verdict of unlawful sexual penetration by force while armed with a deadly weapon, *i.e.,* coat hanger, board, and extension cord. The proof also established that the Appellant caused bodily injury to the victim. We conclude that the evidence was sufficient to convict the Appellant of two counts of aggravated rape.

The Appellant's conviction for especially aggravated kidnapping has previously been reviewed. Based upon this review, we find that this issue is without merit. Accordingly, the evidence legally is sufficient to support both aggravated rape convictions and the especially aggravated kidnapping conviction.

### IV. Failure to Articulate Sentencing Findings

The Appellant next argues that the trial court failed to follow sentencing guidelines. Specifically, the Appellant argues that "[t]he trial court failed to articulate on the record how any of these particular enhancement factors applied to the two convictions for especially aggravated kidnapping and two convictions for aggravated rape for which it was sentencing the Appellant." He asks this court to remand this matter for a new sentencing hearing.

The trial court utilized the following factors, pursuant to Tennessee Code Annotated § 40-35-114 (1997), to enhance the Appellant's sentence:

1. The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

5. The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

8. The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; [and]

10. The defendant had no hesitation about committing a crime when the risk to human life was high.

We find the trial court did articulate on the record how these factors applied to this Appellant. Even if the trial court weighed these factors more heavily than the Appellant feels appropriate, the decision to do so is given the proper discretion allowed a trial court in considering enhancement factors. *See State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). The record clearly supports the trial court's decision to enhance the Appellant's sentences. Thus, this issue is meritless, and the sentence of sixty years for each conviction was proper.

## V. Consecutive Sentencing

The Appellant argues that the trial court erred by ordering his sixty-year concurrent aggravated rape convictions to be served consecutively to his sixty-year concurrent especially aggravated kidnapping convictions, resulting in a one-hundred and twenty year sentence. Specifically, he asks this court to order that the sentences for each conviction run concurrently for an effective sixty-year sentence.

With reference to the particular facts of this case, Tennessee Code Annotated § 40-35-115(b) (1997) provides that the sentencing court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(2) The defendant is an offender whose record of criminal activity is extensive; [or]
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is great.

This court's review of the manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). Likewise, the Appellant bears the burden of proving the impropriety of the consecutive nature of the sentences imposed. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(1997).

Before consecutive sentences can be imposed, the trial court must (1) determine that one or more of the statutorily enumerated criteria of Tennessee Code Annotated § 40-35-115 exists, and (2) if the defendant is found to be a dangerous offender, find that the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity of the offender. *State v. Wilkerson*, 905 S.W.2d 933, 936-38 (Tenn. 1995); *see also State v. Lane*, 3 S.W.3d 456 (Tenn. 1999) (holding *Wilkerson* factors were limited to sentencing of "dangerous offenders"). Notwithstanding proof of these criteria, a sentencing court retains the discretion of imposing consecutive sentences. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-115 (1997). On appeal, the exercise of the sentencing court's discretion is afforded great weight, provided the court correctly applied the principles of consecutive sentencing. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Moreover, in determining whether the sentencing court providently exercised its discretion, "the overriding concern" is the fairness of the resulting sentence

under all the circumstances.  *State v. Sullivan*, No. M1999-02547-CCA-R3-CD (Tenn. Crim. App. at Nashville, October 13, 2000); *see generally State v. Gray,* 538 S.W.2d 391 (Tenn. 1976).

In its sentencing decision, the trial court ordered the Appellant to serve consecutive sentences and reasoned in part as follows:

> Then with regard to the consecutive sentencing, the criteria are, again, established, that he has a record of criminal activity which is extensive.  That's undeniable.  It dates back to 1981 - he must have twelve or fifteen convictions, five of which, prior to these matters, were for violent offenses, and that he's a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high.  Clearly these matters and the five violent offenses prior to these all establish that.

Although the trial court's findings allude to both classifications of "extensive criminal history" and "dangerous offender," the record clearly supports the finding that the Appellant is a dangerous offender.  As such, any review of the Appellant's classification as an offender possessing an extensive criminal history is unnecessary.  Moreover, although the trial court appeared to co-mingle the classifications, we find the court's references to the Appellant's criminal history were primarily made within the context of finding the Appellant a dangerous offender.  Clearly the trial court was warranted in considering the fact that the Appellant was previously convicted of aggravated assault, coercion of a witness, two counts of attempted aggravated kidnapping, and two counts of robbery when finding him to be a dangerous offender.

The Appellant argues that the trial court erred by finding that the Appellant had no hesitation to commit a crime where the risk to human life is high.  Specifically, the Appellant states, "there is nothing in the present record which would indicate that [he] had 'no hesitation' about committing these crimes."  We disagree.  The Appellant heated a coat hanger on the stove, and proceeded to rape the victim with the hanger while pouring rubbing alcohol into her vagina.  He then raped her with his penis.  During this time, the victim was tied up and brutally beaten.   The trial court did not err by finding that the Appellant exhibits no hesitation to commit crimes where the risk to human life is great.

Finally, the Appellant contends that the trial court erred by finding that the Appellant poses an ongoing danger to the community.  Specifically, the Appellant asserts that

> At the time of these offenses [he] was a high school graduate and he was gainfully employed as a carpenter.  Additionally, concurrent sentencing would mean that the thirty-nine (39) year old appellant would serve a sixty (60) year sentence on two offenses which do not allow for the possibility of parole. . . .  It is difficult to understand how society will need an additional sixty (60) years of protection in order to prevent further criminal conduct by a man who will be approximately ninety (90) years old at his earliest release date.

This argument has been repeatedly rejected. "The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments. Otherwise defendants would escape the full impact of punishment for one of their offenses." *State v. Robinson*, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1996) (citing *Frost v. State*, 336 Md. 125, 647 A.2d 106, 115 (1994)) (defendant received consecutive life sentences for two first-degree murder convictions); *see also State v. Pike*, 978 S.W.2d 904, 928 (Tenn. 1998); *State v. Black,* 815 S.W.2d 166, 170 (Tenn. 1991); *State v. Howell*, 34 S.W.3d 484, 506-15 (Tenn. Crim. App. 2000); *State v. Ensley*, 956 S.W.2d 502, 514 (Tenn. Crim App. 1996). The Appellant violently raped and beat the victim. The Appellant's past convictions, along with the present crimes, clearly reveal that the Appellant is an ongoing danger to the community. The Appellant should not escape the impact of consecutive sentencing merely because his crime was determined so heinous as to merit the maximum sentence. *Robinson*, 930 S.W.2d at 85.

Sentencing is inescapably a human process that neither can nor should be reduced to a set of fixed and mechanical rules. *Wilkerson*, 905 S.W.2d at 938. The trial court imposed consecutive sentences of sixty years for the aggravated rape charges and sixty years for the especially aggravated kidnapping charges, for an effective sentence of one-hundred and twenty years. Upon *de novo* review, we conclude that the imposition of consecutive sentences was appropriate, as the proof established that the aggregate sentence imposed is reasonably related to the severity of the offenses and was necessary to protect the public from further criminal acts of this Appellant. Accordingly, this issue is without merit.

## CONCLUSION

Based upon the foregoing, we conclude that the Appellant's convictions for two counts of aggravated rape and one count of especially aggravated kidnapping were proper. We further conclude that consecutive sentencing was appropriate. Finding that the Appellant's dual convictions for especially aggravated kidnapping violate double jeopardy principles, we vacate and dismiss the Appellant's conviction under Count 2 of Indictment No. 99-11093. This case is remanded to the trial court for entry of a corrected judgment of conviction with regard to this Count. In all other respects, the judgments of conviction and sentences are affirmed.

_____
DAVID G. HAYES, JUDGE