IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE v. CLIFFORD ROGERS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-01869-70     Joseph B. Dailey, Judge**

---

**No. W2003-01375-CCA-R3-CD  - Filed April 1, 2004**

---

Following a jury trial, Defendant, Clifford Rogers, was convicted of premeditated first degree murder, felony murder, and aggravated assault. Defendant received an effective sentence of life plus fifteen years for his convictions. In this appeal as of right, Defendant challenges the sufficiency of the convicting evidence and the trial court's order of consecutive sentencing. Because the trial court erroneously entered judgments of convictions for the offenses of premeditated first degree murder and felony murder, rather than merging the two offenses at sentencing, we merge Defendant's conviction for felony murder with his conviction for premeditated murder and remand this case for entry of judgments consistent with this opinion. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court**
**Affirmed in Part, Convictions for First Degree Murder Merged**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Robert Wilson, District Public Defender; and Garland Ergüden, Assistant Public Defender, for the appellant, Clifford Rogers.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Gerald Harris, Assistant District Attorney, for the appellee, the State of Tennessee.

### OPINION

The homicide victim, Bob Kapos, managed rental properties. On September 28, 2001, Paul Gales, the aggravated assault victim, worked for Mr. Kapos, painting the outside of a duplex apartment. Mr. Gales testified that Defendant arrived at the duplex apartments where Mr. Gales and Mr. Kapos were working at approximately 9:00 a.m. Defendant asked Mr. Kapos if there was any work available. Mr. Gales heard Mr. Kapos tell Defendant that he did not have any work for him.

Later that same day, Defendant returned and demanded money from Mr. Kapos. Defendant and Mr. Kapos got into a "heated argument." Mr. Gales approached the men, and Defendant told him to "get out of his business" and pushed him down. Mr. Gales returned to his job, and Defendant and Mr. Kapos continued to argue. Mr. Gales then saw Defendant "trying to hit [Mr. Kapos] with a jack." Mr. Gales and a coworker, Anthony Taylor, entered the house where Defendant and Mr. Kapos were fighting. Mr. Taylor grabbed Defendant, and Mr. Gales wrestled the jack out of his hands and threw it across a fence behind the house. Mr. Kapos told Defendant to leave, and Defendant reluctantly left.

Defendant returned later, and Mr. Gales saw Defendant enter the house where Mr. Kapos was working. Defendant "had a deadly look in his eye." Mr. Gales entered the house and saw Defendant and Mr. Kapos arguing again. Defendant pulled out a handgun and pointed it at Mr. Gales. Mr. Gales raised his hands to shield his face. Defendant shot Mr. Gales in his right hand. Mr. Gales "ducked around the back of the house," and then ran across the street to Sam's Pool Hall. As he was leaving, he saw Mr. Kapos run towards the back door. He then heard one or two more gunshots. At the hospital, Mr. Gales admitted that he drank a forty-ounce beer that day.

Anthony Taylor testified that on September 28, 2001, he helped "Shorty" Paul Gales on a painting job for Mr. Kapos. Mr. Taylor overheard Defendant and Mr. Kapos arguing about money. Mr. Taylor testified that Defendant struck Mr. Kapos on the arm with a jack. Mr. Taylor "broke them up" and told Defendant to leave. Mr. Taylor smelled an odor of alcohol on Defendant, and Defendant appeared to be "wobbling." As Defendant left, he said, "Just wait, when I come back I'm going to be like the old Clifford."

Mr. Taylor testified that Defendant returned approximately twenty minutes later. Mr. Taylor saw Defendant enter the house, and then he heard a gunshot. Mr. Taylor ran to his mother's apartment and stood on the front porch. Mr. Taylor's mother, Ollie May Taylor, lives in the same apartment complex where the incident occurred. She and Mr. Taylor's niece Katrina were inside the apartment at the time of the shooting. Mr. Taylor saw Defendant and Mr. Gales arguing, and Mr. Gales was bleeding. Mr. Taylor saw Mr. Gales run across the street to the pool hall. Mr. Kapos ran towards the door, and Defendant followed him and shot him. Mr. Kapos said, "Please don't kill me," and Defendant "pulled him back up in the house and shot him again." Mr. Kapos fell onto his right side on the front porch. Defendant rolled Mr. Kapos over and took his wallet out of his pocket. While Defendant was taking the victim's wallet, the gun fired and Defendant apparently shot himself in the foot. Defendant "hopped" across a field. Mr. Taylor and his nephew Robert Louis Taylor began chasing Defendant, but they turned around when they saw that he still had the gun. The police arrived at that time. Mr. Taylor never saw Mr. Kapos in possession of a weapon.

Robert Louis Taylor was inside one of the other duplex apartments at the time of the incident. He heard gunshots and went outside onto the front porch. He saw Mr. Kapos coming out the front door of another duplex. He then saw Defendant grab Mr. Kapos' shirt and shoot him in the back. Mr. Kapos fell onto the front porch. Defendant then rolled Mr. Kapos over and took his wallet from his back pocket. Defendant looked inside the wallet. Mr. Taylor heard another gunshot while

Defendant was taking Mr. Kapos' wallet. Defendant then pointed the gun at Mr. Taylor's uncle, Anthony Taylor, who was hiding behind a garbage can.

At the time of the incident, Katrina Taylor was at her grandmother's house. Her grandmother, Ollie May Taylor, lived in Apartment 4 of the duplex apartments where the shooting occurred. Ms. Taylor was inside when she heard gunshots. From her window, Ms. Taylor saw Mr. Kapos go outside through the front door of Apartment 8. She saw Defendant pull Mr. Kapos back and shoot him in the back. Defendant then took Mr. Kapos' wallet from his pocket. Ms. Taylor began crying and called 911. When she looked back, she saw Defendant going across the field. Ms. Taylor did not see Mr. Kapos with a weapon.

Dr. O. C. Smith, the medical examiner for Shelby County, performed an autopsy on the victim, Mr. Kapos. Dr. Smith testified that the victim died as a result of a gunshot wound to the chest, and the manner of death was homicide. The victim sustained two gunshot wounds to the chest. The bullets entered the victim's back and lodged inside the victim's body. The projection of the bullets through the victim's body was slightly upward. Dr. Smith did not find any soot or stippling around the victim's wounds. Dr. Smith testified that most handguns will generally produce "powder burns" if fired within two feet of a target. The victim tested negative for alcohol and drugs.

## Sufficiency of the Evidence

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). This Court may not reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The State is entitled to the strongest legitimate view of the evidence and all inferences to be drawn therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Defendant was convicted of premeditated first degree murder, felony murder, and aggravated assault. Initially, we observe that the trial court did not merge Defendant's convictions for felony murder and premeditated first degree murder, but rather entered judgments for all three convictions and sentenced Defendant to life imprisonment for both murder convictions, to be served concurrently. In *State v. Howard*, 30 S.W.3d 271 (Tenn. 2000), the supreme court held that premeditated murder and felony murder were not separate offenses, but different theories of guilt for the crime of first degree murder. *Id.* at 274, n.4. Therefore, separate convictions for both felony murder and premeditated murder based upon the same occurrence must be merged. In this case, assuming the trial court found the evidence sufficient to support both verdicts, the trial court should

have merged the guilty verdicts into one judgment for first degree murder. *See State v. Cribbs*, 967 S.W.2d 773, 788 (Tenn. 1998). Accordingly, Defendant's conviction for felony murder must be merged with his conviction for premeditated murder, and this case is remanded for entry of judgments consistent with this opinion.

Tennessee Code Annotated section 39-13-202(a) defines first degree murder as a "premeditated and intentional killing of another." Premeditation necessitates "a previously formed design or intent to kill," *State v. West*, 844 S.W.2d 144, 147 (Tenn. 1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id*.

Premeditation is a question of fact to be determined by the jury. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Premeditation can be inferred from the manner and circumstances of the killing. *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). Our supreme court has held that the following factors tend to evidence premeditation: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing." *See id*.

Defendant argues that the record does not support his conviction for premeditated murder. Defendant asserts that he was "attacked" by Mr. Gales and Mr. Taylor and was sufficiently provoked. In a statement made by Defendant to Sergeant Tracy Gossett on the day after the incident, Defendant stated that he worked for Mr. Kapos, stealing doors from Memphis Housing Authority and taking them to Mr. Kapos to install in his apartments. Defendant asked Mr. Kapos for money that he claimed Mr. Kapos owed him, and Mr. Gales and Mr. Taylor "jumped on him and started kicking him," and that Mr. Kapos "kicked him in the stomach." Defendant stated that a neighbor told him to leave at that time. Defendant left and returned later with a .22 caliber revolver. He did not state where he got the gun. Defendant entered the house where Mr. Kapos was working. Mr. Kapos, Mr. Gales, and Mr. Taylor "went to jump on him again, and Defendant shot Mr. Kapos twice in the back. Defendant then accidentally shot himself. Defendant left and went to his niece's house where he was later arrested.

Viewed in a light most favorable to the State, the proof at trial showed that Defendant and the victim engaged in a "heated" argument prior to Mr. Kapos' death. During the argument, Defendant hit Mr. Kapos with a jack and made a verbal threat as he was leaving. Defendant later returned to the duplexes armed with a handgun. Defendant shot the unarmed victim, Mr. Kapos, in the back as he attempted to run from Defendant and while he pleaded for his life. Defendant then took Mr. Kapos' wallet.

Regarding Defendant's conviction for aggravated assault, a person commits an aggravated assault when the person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). Viewed in

-4-

a light most favorable to the State, the proof at trial showed that Defendant shot Mr. Gales in the hand.

The evidence was sufficient to support beyond a reasonable doubt Defendant's convictions for the premeditated first degree murder of Bob Kapos and the aggravated assault of Paul Gales. Defendant is not entitled to relief on this issue.

**Consecutive Sentencing**

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this Court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

Tennessee Code Annotated section 40-35-115(b) provides that a defendant who is convicted of more than one criminal offense may be sentenced to consecutive sentences if the court finds by a preponderance of the evidence that: (1) the defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood; (2) the defendant is an offender whose record of criminal activity is extensive; (3) the defendant is a dangerous mentally abnormal person; or (4) the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime with high risk to human life; (5) the defendant is convicted of certain sex offenses; (6) the defendant is sentenced for an offense committed while on probation; or (7) the defendant is sentenced for criminal contempt. Tenn. Code Ann. § 40-35-115(b).

If the trial court concludes that the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

At the sentencing hearing, the trial court found that Defendant had an extensive criminal history, and the trial court stated,

> [I]t's pretty clear that a major source of [Defendant's] livelihood has been criminal conduct. He only made it to the seventh grade, has virtually no work

history. And every couple of years since age 18 he's been found guilty of first degree burglaries, which would I think support this conclusion that this was a major source of his livelihood.

The presentence report was not made a part of the record on appeal. It is the appellant's duty to prepare such a record and transcript necessary to convey a fair, accurate and complete account of what transpired relative to the issues on appeal. Tenn. R. App. P. 24(b). In determining a defendant's sentence, the trial court is required to consider the presentence report. Tenn. Code Ann. § 40-35-210(b)(2). From the transcript of the sentencing hearing, it appears that the trial court considered and relied upon the presentence report in making its findings. When this Court is unable to review all of the evidence considered by the trial court in setting a sentence, we must conclusively presume that the trial court's ruling was correct. *See State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990). In addition, Defendant does not contest the trial court's findings that he has an extensive criminal history.

The trial court also found that Defendant's "conduct that day showed little or no regard for the lives of others." Defendant challenges this finding. As stated above, however, the trial court found two other statutory bases for ordering consecutive sentencing. A finding of either of these two factors alone would support consecutive sentencing. We conclude that proof in the record supports the trial court's findings and its order of consecutive sentencing. Defendant is not entitled to relief on this issue.

## CONCLUSION

Defendant's conviction for felony murder is merged with his conviction for premeditated first degree murder. The judgments of the trial court are otherwise affirmed, and this case is remanded for entry of judgments consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE

-6-