# IN THE SUPREME COURT OF TENNESSEE
# AT JACKSON

## STATE OF TENNESSEE  v.  FRANKLIN HOWARD

**Appeal from the Criminal Court for Shelby County**
**No. 95-07822-24      Joseph Dailey, Judge**

---

**No. W1997-00047-SC-R11-CD  —  Decided July 6, 2000**

---

This is an appeal from the Criminal Court for Shelby County which convicted the defendant of premeditated first degree murder, especially aggravated robbery and conspiracy to commit aggravated robbery.  The defendant filed a motion for a new trial and argued that the evidence was insufficient to sustain a conviction for premeditated murder.  The court overruled the motion, and the defendant appealed.  The Court of Criminal Appeals concluded that the evidence was insufficient to sustain a finding that the defendant was the principal actor in causing the death of the victim.  Nevertheless, the court found that his conviction could be sustained under a theory of criminal responsibility for premeditated murder because premeditated murder was a natural and probable consequence of aggravated robbery under the facts of the case.  We then granted the defendant's application for permission to appeal.  We hold that the natural and probable consequences rule can be used to sustain a defendant's conviction for first-degree premeditated murder based upon criminal responsibility for the conduct of a co-defendant.  The jury, however, must be instructed on all elements of a charge of criminal responsibility, including the natural and probable consequences rule.  Because the jury was not instructed on the natural and probable consequences rule, the defendant's conviction for first degree premeditated murder is reversed, and this case is remanded to the trial court for a new trial.

**Tenn. R. App. R. 11; Judgment of the Court of Criminal Appeals Reversed and Remanded**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and BIRCH and HOLDER, JJ., joined.  DROWOTA, J., not participating.

James V. Ball and Joseph S. Ozment, Memphis, Tennessee, for the appellant, Franklin Howard.

Michael E. Moore, Solicitor General, and Peter M. Coughlan, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

# OPINION

On January 27, 1995, Antonio Saulsberry, Clashaun Sharkey, Claude Sharkey, and Kevin Wilson were riding in Claude Sharkey's car when Claude Sharkey and Kevin Wilson began asking Saulsberry questions about his employment at T.G.I. Friday's, a Memphis restaurant. Saulsberry told the men that the restaurant closed at 1 a.m. and that access to the restaurant could be gained after business hours when employees used the back door to dispose of trash outside. The men told Saulsberry that they were considering robbing the restaurant, and Saulsberry responded that the men were "crazy" and that he would have nothing to do with the scheme.

At approximately 2:00 a.m. the following morning, defendant Franklin Howard, Kevin Wilson, Clashaun Sharkey, and Claude Sharkey approached the rear entrance of the T.G.I. Friday's where Saulsberry worked.[1] Each man wore a ski mask. John Paul Wong, an employee, walked out the back door and was preparing to throw out garbage when he saw four men, one with a gun pointed at Wong's face. The men ordered Wong to go back into the restaurant, and one man shouted, "Shoot the motherf----r." The men followed Wong inside where they ordered the employees to lie on the floor. Jessica Hoard, a waitress, testified that each of the four masked men had a gun and that one man told her, "Get on the floor before I shoot you!"

After they ordered the employees to lay on the floor, the intruders went to the office of the manager, Eugene Frieling. Preston Shea, another employee, was leaving the manager's office when he encountered the men, who screamed at him, hit him, and knocked him to the ground. The men ordered Shea to give them his money, and he responded immediately by pulling out his wallet, which the men took.

The men then entered the manager's office and yelled at Frieling to give them the money. Shea testified that although Frieling complied and gave the men the money they demanded, one man ordered, "Shoot his ass. Shoot the motherf----r." Despite his cooperation with the robbers' demands, Frieling was shot and killed. As the men left the manager's office, they began kicking Shea violently even though they had already stolen his wallet. Shea was then shot three times; two bullets struck him in one leg. A third bullet entered his rectum and traveled through his bladder and iliac artery causing him to lose control of his bowels. Despite sustaining serious wounds, Shea managed to crawl into Frieling's office and dial 9-1-1 before he passed out.

Defendant Howard was ultimately charged with first-degree premeditated murder, two counts of first-degree felony murder,[2] especially aggravated robbery, and conspiracy to commit aggravated

---

[1] Saulsberry was not working that night nor did he join the Sharkeys, Wilson, and Howard as they robbed the restaurant.

[2] The indictment charged the defendant with murder in the perpetration of a robbery, and murder in the perpetration of a burglary.

robbery.[3] At the time of his arrest, he consented to a search of his home. During the course of that search, a .32 caliber revolver was recovered. At trial, the court admitted into evidence a signed statement wherein Howard admitted that he had accompanied Claude Sharkey, Clashaun Sharkey and Kevin Wilson to the restaurant knowing that they intended to rob it. In his statement he admitted that all three of the other men had guns, but he neither admitted nor denied that he carried a gun himself. He claimed that when they went into the restaurant he stayed "all the way in the back." Once he heard gunshots, he ran to the car. The other men followed him to the car and Wilson stated, "I shot him, man, I shot him."

Ballistics testing and witness testimony indicated that different people shot Frieling and Shea, but none of the casings that were tested matched the gun found in Howard's home. Indeed, the State did not introduce any evidence that Howard shot either Frieling or Shea.

At the conclusion of the evidence, with regard to the counts of premeditated murder and felony murder, the court instructed the jury to consider the charges in the following sequence: (1) first-degree premeditated murder; (2) first-degree murder during the perpetration of a robbery; (3) first-degree murder during the perpetration of a burglary; (4) facilitation of first-degree premeditated murder; (5) facilitation of first-degree murder during the perpetration of robbery; and (6) facilitation of first-degree murder during the perpetration of burglary. The court instructed the jury that after it reached a verdict with regard to first-degree murder on any of the above theories, it should proceed directly to deliberate on the remaining charges of especially aggravated robbery and conspiracy. Thus, if the jury convicted Howard of premeditated first-degree murder, they were not to consider felony murder or facilitation of first-degree or felony murder.[4] Finally, the jury was instructed on criminal responsibility for the conduct of another, and told that

---

[3] Claude Sharkey, Clashaun Sharkey, and Wilson were identically charged.

[4] While it was not error for the trial court to deliver sequential jury instructions, see Harris v. State, 947 S.W.2d 156, 175 (Tenn. Crim. App. 1996), we have previously urged trial courts to allow juries to consider all theories of first-degree murder. See State v. Cribbs, 967 S.W.2d 773, 787-88 (Tenn. 1997); State v. Carter, 958 S.W.2d 620, 624-25 n.6 (Tenn. 1997). We are compelled to emphasize this point again: *a trial court should instruct a jury to render a verdict as to each count of a multiple count indictment which requires specific jury findings on different theories of first-degree murder.* If the jury does return a verdict of guilt on more than one theory of first-degree murder, the court may merge the offenses and impose a single judgment of conviction. See State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). The benefits of instructing the jury in this manner are important. First, the double jeopardy problem of retrying a defendant after a subsequent appellate opinion reverses a conviction as unsupported by evidence is precluded. Second, the State will have a basis to protect other convictions to which it may be entitled. Third, in light of our decision in State v. Middlebrooks, 840 S.W.2d 317 (1992), a jury verdict on each charged offense will allow the State to use the felony murder aggravator as an aggravating circumstance in sentencing. See State v. Hall, 958 S.W.2d 679, 692-93 (Tenn. 1997).

The defendants are criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendants solicit, direct, aid, or attempt to aid another person to commit the offense.

The court did not, however, instruct the jury on the natural and probable consequences rule.

The jury convicted Howard of premeditated murder, especially aggravated robbery, and conspiracy to commit aggravated robbery. At the sentencing phase, the jury found as a statutory aggravator that the murder was committed during the commission of a robbery, and it sentenced Howard to life without the possibility of parole. The court further sentenced Howard to twenty-five years for especially aggravated robbery and six years for the conspiracy to commit aggravated robbery.[5] Following the trial, Howard filed a motion for a new trial alleging that the evidence was insufficient to show premeditation or intent, and the court overruled this motion.

In examining Howard's argument that evidence was insufficient to show premeditation or deliberation, the Court of Criminal Appeals recognized that because the State had offered no proof that Howard fired the shots that killed the victim, Howard's conviction must be based upon his criminal responsibility for the conduct of the shooter. After examining the conduct of the perpetrators during this robbery, in which they directed and encouraged one another to shoot first Wong, then Frieling and Shea, the court concluded that the murder of Gene Frieling was a "natural and probable consequence" of the robbery. Although the jury was not instructed on the natural and probable consequences rule, the Court of Criminal Appeals affirmed the judgment of the trial court based on the criminal responsibility theory. Howard then sought, and this Court granted, permission to appeal on the following issue: whether the natural and probable consequences rule can be used to sustain a defendant's conviction for first degree premeditated murder based upon criminal responsibility for the conduct of a co-defendant during an especially aggravated robbery.

## DISCUSSION

The State does not argue, nor does the evidence suggest, that Franklin Howard fired the weapon that killed Eugene Frieling. Instead, the State argues that Howard is criminally responsible for premeditated murder which it contends is a natural and probable consequence of armed robbery. The defendant presents three arguments why the natural and probable consequences rule should not apply in this case: (1) the rule should not apply to an offense requiring an intentional mental state; (2) the rule as applied to homicides is already codified in the felony-murder statute; and (3) there is

---

[5] The jury convicted Antonio Saulsberry of premeditated murder, especially aggravated robbery, and conspiracy to commit a robbery. The Court of Criminal Appeals reversed his conviction for premeditated murder because it was not supported by sufficient evidence. Claude Sharkey entered into a plea bargain agreement in which he agreed to plead guilty to felony murder. Kevin Wilson also entered into a plea bargain agreement. Clashaun Sharkey was tried separately, but the record does not reveal the verdict in that trial.

no factual basis for a finding that premeditated murder is the natural and probable consequence of aggravated robbery.

A defendant is criminally responsible as a party to an offense and may be charged with commission of the offense where the offense is committed by another person for whom the defendant is criminally responsible. <u>See</u> Tenn. Code Ann. § 39-11-401 (1997). In instructing the jury on criminal responsibility for premeditated murder, the court relied on the following statutory provision:

> A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . .

Tenn. Code Ann. § 39-11-402(2) (1997). This provision is a codification of the common law which provided equal criminal liability for principals, accessories before the fact, and aiders and abettors. <u>See</u> Tenn. Code Ann. §§ 39-11-401, -402 Sentencing Commission Comments. Howard does not dispute the application of the criminal responsibility statutes in this case. Rather he argues that the natural and probable consequences rule cannot be used in conjunction with these statutes to impose criminal liability for premeditated murder.

It is beyond dispute that the natural and probable consequences rule survived the codification of the common law into the criminal responsibility statutes even though it is not explicitly included in the statutes. <u>State v. Carson</u>, 950 S.W.2d 951, 954-55 (Tenn. 1997). The rule underlies the doctrine of criminal responsibility and is based on the recognition that aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put into motion. <u>Id.</u>, <u>see also</u> <u>Key v. State</u>, 563 S.W.2d 184, 186 (Tenn. 1978); <u>State v. Grooms</u>, 653 S.W.2d 271 (Tenn. Crim. App. 1983). The doctrine extends the scope of criminal liability to the target crime intended by a defendant as well as to other crimes committed by a confederate that were the natural and probable consequences of the commission of the original crime. <u>See</u> <u>Carson</u>, 950 S.W.2d at 954-55.

Howard argues that for the natural and probable consequences rule to apply, "this Court should be required to make a specific finding that a premeditated first degree murder, or homicide in general, is the natural and probable consequence of an armed robbery." In making this finding, Howard asserts that this Court must rely on a battery of statistical data comparing the number of robberies and murders in Shelby County for a seven year period. We decline to engage in such fact finding as that is not a function of this tribunal. <u>See</u> <u>In re Askew</u>, 993 S.W.2d 1, 5 (Tenn. 1999).

By contrast, the State argues that this Court "should rely upon the experience of the fact-finder . . . to determine whether an [act] was a natural and probable consequence of the underlying crime." In <u>Carson</u>, we observed that the natural and probable consequence rule "presupposes an outcome within a reasonably predictable range." 950 S.W.2d at 955 (quoting <u>Roy v. United States</u>, 652 A.2d 1098, 1105 (D.C. App. 1995)). We agree with the State that this is a determination within the province of the jury as finder of fact. <u>Cf.</u> <u>People v. Prettyman</u>, 926 P.2d 1013, 1024 (Cal. 1996). Thus, to impose criminal liability based on the natural and probable consequences rule, the State must

prove beyond a reasonable doubt and the jury must find the following: (1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and (3) that the other crimes that were committed were natural and probable consequences of the target crime.

At trial, the court instructed the jury that to convict Howard of premeditated murder, the jury had to find that the State proved beyond a reasonable doubt the elements of premeditated murder and that Howard was liable for the murder based on the theory of criminal responsibility for the conduct of another. The court did not instruct the jury on the natural and probable consequences rule, which is an essential element that the State must prove beyond a reasonable doubt.

While there may have been evidence to support a finding that premeditated murder was a natural and probable consequence of robbery under the facts of this case, this was a finding of fact for the jury to determine. We are unwilling to usurp the jury's fact-finding role in deciding whether the State has proved an essential element of the offense beyond a reasonable doubt. Thus, because the jury was not properly instructed on the natural and probable consequences rule and did not have the opportunity to determine whether this element was proved, the defendant's conviction for premeditated murder is reversed.[6]

Although Howard's conviction is reversed, we conclude that he may be retried for first degree murder. Article I, section 10 of the Tennessee Constitution requires "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb." The Fifth Amendment to the United States Constitution also provides that no "person shall be subject for the same offense to be twice put in jeopardy of life or limb."[7] When a conviction is reversed for insufficient evidence, the guarantee against double jeopardy mandates dismissal. See Burks v. United States, 437 U.S. 1, 10 (1978). But when a conviction is reversed on appeal for trial errors, the guarantee against double jeopardy generally does not preclude a retrial of the defendant. See Lockhart v. Nelson, 488 U.S. 33, 39 (1988).

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, *incorrect instructions*, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt,

---

[6] Because we cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error, we cannot find the error harmless. See Neder v. U.S., 119 S. Ct. 1827, 1837 (1999) (holding that the omission of an element is subject to harmless error analysis).

[7] The Double Jeopardy Clause of the Fifth Amendment is enforceable against the states through the Fourteenth Amendment. See Benton v. Maryland, 395 U.S. 784, 794 (1969).

free from error, just as society maintains a valid concern for insuring that the guilty are punished.

Burks, 437 U.S. at 15 (emphasis added). In this case, reversal is based on trial error, specifically, the trial court's failure to properly instruct the jury on the natural and probable consequences rule. Accordingly, Howard's conviction is reversed, and this case is remanded for a new trial.

## CONCLUSION

We hold that the natural and probable consequences rule can be used to sustain a defendant's conviction for first degree premeditated murder based upon criminal responsibility for the conduct of a co-defendant during an especially aggravated robbery. The jury, however, must be instructed on all elements of a charge of criminal responsibility, including the natural and probable consequences rule. Because the jury was not instructed on the natural and probable consequences rule, the defendant's conviction is reversed, and this case is remanded to the trial court for a new trial.

Costs of this appeal are taxed to the appellee, the State of Tennessee.