# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 23, 2010 Session

## BILLY J. COFFELT v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 99-A-552    J. Randall Wyatt, Jr., Judge

---

### No. M2009-00474-CCA-R3-PC - Filed November 5, 2010

---

In Davidson County Criminal Court, following a jury trial, Petitioner was convicted of felony escape, two counts of aggravated assault and three counts of especially aggravated kidnapping. *State v. Lyle T. Van Ulzen*, No. M2004-02462-CCA-R3-CD, 2005 WL 2874654, at *1-2 (Tenn. Crim. App., at Nashville, Oct. 31, 2005); *State v. Billy J. Coffelt*, No. M2002-01214-CCA-R3-CD, 2003 WL 22116628, at *1-2 (Tenn. Crim. App., at Nashville, Sept. 11, 2003), *perm. app. denied* (Tenn. Feb. 2, 2004). After direct appeal to this Court and resentencing, Petitioner's effective sentence was ninety years. *Lyle T. Van Ulzen*, 2005 WL 2874654, at *6-7. Petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied the petition. On appeal, Petitioner argues that the post-conviction court erred in denying his petition. Petitioner specifically argues that trial counsel was ineffective because trial counsel: (1) refused to allow Petitioner to testify at trial and failed to request a *Momon* hearing; (2) failed to request Pattern Jury Instruction 8.02 and an instruction on the elements of false imprisonment as a lesser included offense of especially aggravated kidnapping; (3) failed to request a jury instruction for the natural and probable consequences rule; (4) failed to raise in either the motion for new trial or on direct appeal the issue of stipulation of the offense for which Petitioner was incarcerated at the time of his escape; and (5) failed to request a severance from the co-defendant. After a thorough review of the record on appeal, we affirm the post-conviction court's denial of the petition.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David Collins, Nashville, Tennessee, for the appellant, Billy J. Coffelt.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual Background*

Petitioner and a co-defendant were each convicted of one count of felony escape, two counts of aggravated assault and three counts of especially aggravated kidnapping stemming from their assault and confinement of three correctional officers at Riverbend Maximum Security Institution ("Riverbend") and subsequent escape from the institution. *Lyle T. Van Ulzen*, 2005 WL 2874654, at *1-2; *State v. Billy J. Coffelt*, 2003 WL 22116628, at *1-2. Petitioner was sentenced to life imprisonment without possibility of parole for the especially aggravated kidnapping conviction, two years for the escape conviction, and six years for the aggravated assault conviction. *Billy J. Coffelt*, 2003 WL 22116628, at *1.

On direct appeal, this Court affirmed Petitioner's convictions and vacated and remanded Petitioner's life sentence with regard to the especially aggravated kidnapping convictions. *Id.* at *9. Upon resentencing, the trial court sentenced Petitioner to thirty years for each especially aggravated kidnapping conviction to be served consecutively which is an effective sentence of ninety years. *Lyle T. Van Ulzen*, 2005 WL 2874654, at * 3. Petitioner appealed the effective ninety-year sentence to this Court. *Id.* at *1. This Court affirmed the effective ninety-year sentence. *Id.* at *6-7.

On August 31, 2004, Petitioner filed a petition for post-conviction relief. However, at the time he filed the petition, his appeal from the trial court's resentencing was pending. Therefore, by order filed December 2, 2004, the post-conviction court stayed any proceedings on the petition until Petitioner's appeal from the resentencing was concluded. After the conclusion of the appeal from the resentencing, Petitioner filed two subsequent amended petitions for post-conviction relief on November 9, 2007, and April 17, 2008. On December 8, 2008, the post-conviction court held a hearing.

Petitioner testified at the hearing. He stated that trial counsel erred at trial because he did not join in the co-defendant's motion to request a jury instruction on kidnapping for the purpose of committing another offense. Petitioner stated that his co-defendant's motion for the jury instruction was overruled. Petitioner also maintained that he wanted to testify at trial. However, trial counsel told him he was not going to testify. He did not go in front of

-2-

the trial court for an explanation regarding his right to testify. He stated that he did not know he was not going to testify until right after the State rested its case.

Petitioner's co-defendant filed a motion to suppress regarding a statement Petitioner gave to the authorities about the escape. The motion was granted, and the trial court ordered that no part of the statement could be entered as evidence at trial. Petitioner maintained that the statement was helpful to him. In addition, Petitioner's co-defendant pled guilty to escape before trial. Petitioner did not plead guilty to any charges. Petitioner asked trial counsel to file a motion for severance from his co-defendant because of the motion to suppress and the fact that his co-defendant pled guilty to escape.

Petitioner requested that trial counsel file a bill of particulars. Trial counsel declined to do so because the State had supplied enough discovery materials. Trial counsel received a great deal of discovery material from the State. Trial counsel shared the information with Petitioner. In the discovery materials, according to Petitioner, there was no indication from Officer Williams, one of the guards who was kidnapped, that she had sustained an injury to her wrist. At the trial, she testified she had been injured, and Petitioner said that her trial testimony was the first time he had heard of an injury. He maintained that a bill of particulars would have clarified the issue as to whether she sustained an injury.

Petitioner also stated that he had informed trial counsel that his prior conviction from 1979 out of Nashville was pending on post-conviction at the time of the trial on the current charges. Because the case was still pending on post-conviction, Petitioner did not believe that conviction should be used to say he was lawfully confined at the time he escaped. The case was subsequently sent back for trial, and the trial judge dismissed the case. According to Petitioner, he agreed to stipulate that he was incarcerated. Trial counsel filed a motion to stipulate that Petitioner was incarcerated on a felony conviction, so there would be no need to go into the nature of the charge. The trial court refused the motion but, eventually, trial counsel stipulated that Petitioner had been convicted of an assault.

Petitioner requested that trial counsel go to the prison and take photographs of the area from which Appellant had escaped. Petitioner knew that trial counsel filed a motion with the trial court to photograph the area. The trial court denied the motion. According to Petitioner, the trial court told trial counsel to get permission from the warden and the commissioner. Petitioner testified that he did not hear anything about the photographs after he received this information. He believed that a photograph of the scene would have shown this Court on direct appeal that the laundry room where the officers were confined contained a window. Petitioner maintained that they could have escaped through that window.

When asked about the fact that there was no *Momon* hearing, Petitioner testified that he believed he was going to testify at trial. He believed that he would be presenting his version of the events. However, according to Petitioner, trial counsel did not want him to testify because his prior convictions would come out at trial. Petitioner stated that his convictions came out at trial anyway. Petitioner testified that he and his co-defendant were on the "Super Max" list that contains the names of inmates who are qualified for the list by reason their prior records. According to Petitioner, the Super Max list was admitted at his trial.

Petitioner admitted that he had spoken with his co-defendant about escaping. Petitioner stated that almost every inmate talks about it, but they do not act on it. He did not believe that his co-defendant was going to act on it until that night.

Petitioner stated that trial counsel conceded his guilt of escape in both opening and closing argument. Petitioner maintained that this constituted ineffective assistance of counsel. Petitioner stated that he never gave permission to trial counsel to plead him guilty. In addition, Petitioner was unhappy about trial counsel's failure to request a jury charge on the natural and probable consequences rule. Petitioner also stated that he believed his statement about trying to stop the escape should have come in under *Bruton v. U.S.*, 391 U.S. 123 (1968), and if trial counsel had been granted a severance then the statement would have been used at trial. Petitioner maintained that he tried to contact someone when the escape was occurring, but his co-defendant had a knife and Petitioner did not. Petitioner again admitted discussing escaping with his co-defendant. However, according to Petitioner, when his co-defendant began talking about taking the officers, Petitioner said no. When the escape began, Petitioner's co-defendant was in charge the entire time.

Trial counsel also testified at the post-conviction hearing. Trial counsel has been licensed since 1992. Sixty to seventy percent of his practice is in criminal defense. Trial counsel recalled representing Petitioner in the matter at hand in 2000. Trial counsel also represented Petitioner in another matter in 2002 or 2003. Trial counsel recalled that Petitioner was in court on several occasions because the trial was pending for a long time. He saw him at the courthouse several times, and he also went to see him one or two times at Riverbend.

Trial counsel testified that the main defense at trial was an *Anthony* defense. Trial counsel stated that it was more of a legal argument. He was not anticipating being able to get a jury instruction about *Anthony*. Because of the underlying facts of the case: the short duration of captivity, the officers' lives were not in danger, and securing the officers was the only way to escape, trial counsel believed that a defense based upon *State v. Anthony*, 817

-4-

S.W.2d 299 (Tenn. 1991) was appropriate. He stated the actual *Anthony* argument would come on appeal, but his plan was to convince the jury that the real offense was an escape.

Trial counsel recalled an attempt to take pictures of the laundry area in the prison. He called the prison officials, and they refused his request to photograph in the prison. At about that time, the State gave trial counsel supplemental discovery. This discovery included twenty to thirty micro cassette tapes of interviews conducted by the prison officials in connection with the escape. Trial counsel stated this information was like having a preliminary hearing for every witness in the case. He believed he knew what was going on with the trial. In addition, he was given diagrams of the scene. Trial counsel felt comfortable with the information he had.

Trial counsel stated that he usually prepares his clients to testify at trial. He asks the client hard questions like the district attorney would ask to gauge the client's reaction. This becomes part of the decision-making process in determining whether the client should testify at trial. The majority of the time, trial counsel reserves the decision until the close of the State's proof. In the case at hand, trial counsel recalled that the co-defendant testified that Petitioner was not responsible for the crimes. Trial counsel believed that the trial had gone about as well as could be expected. Several witnesses testified about the short duration of the detention of the officers. In addition, there was testimony regarding several mistakes made by the prison officials the night of the escape. Trial counsel is sure he advised Petitioner not to testify, but if Petitioner had demanded to testify, trial counsel would have let him testify.

Trial counsel recalled filing a motion in limine asking the trial court to prevent the State from introducing the nature of the crime for which Petitioner was in prison at the time of the escape. Trial counsel agreed to admit that Petitioner was in for a felony but wanted to prevent the jury from discovering the type of felony.

On cross-examination, trial counsel was asked about a jury charge conference with the trial court. Trial counsel stated that if an instruction for false imprisonment was not included in the final jury charge, trial counsel did not request the charge. Trial counsel could not recall any reason for not requesting an instruction for false imprisonment. Likewise, trial counsel could not recall a reason that he did not request Part A of the Pattern Jury Instruction for aggravated kidnapping. Trial counsel agreed that he did not include either the failure to include a jury instruction for false imprisonment or Part A of the aggravated kidnapping pattern jury instruction in his motion for new trial.

Trial counsel was also questioned on cross-examination regarding the issue of the stipulation of the felony for which Petitioner was serving time at the time of the escape. Trial

counsel wanted to stipulate to the felony for which Petitioner was serving time and filed a motion to that effect. The trial court denied the motion. Trial counsel stated that he knew of the Supreme Court's opinion, *Old Chief v. United States*, 519 U.S. 172 (1997), but he could not be sure that he was familiar with it at the time of Petitioner's trial. Instead, on direct appeal, trial counsel cited *State v. Aaron James*, M2000-00495-CCA-R3-CD, 2001 WL 732380 (Tenn. Crim. App., at Nashville, Jun. 29, 2001), *aff'd and remanded, State v. James*, 81 S.W.3d 751 (Tenn. 2002), which had adopted the holding in the *Old Chief* case.

Trial counsel could not remember a suppression motion by the State or Petitioner's co-defendant to suppress a statement made by Petitioner. The co-defendant pled guilty to escape the morning of the trial to the trial court's surprise. Trial counsel could not remember a reason for not requesting a severance at that time. He did not see the co-defendant's plea to escape as prejudicial to Petitioner. He discussed pleading guilty to escape with Petitioner, but Petitioner refused.

Trial counsel stated that he did not request a bill of particulars. He felt sure he knew everything because of the amount of material to which he was allowed access during discovery. He stated that even the State did not realize the officer was claiming an injury as a result of the escape. Trial counsel could not remember any details about the trial court's failure to charge the jury about the natural and probable consequences rule as part of the criminal responsibility charge.

Trial counsel was also questioned regarding the trial court's failure to conduct a *Momon* hearing when Petitioner chose not to testify. He stated that he was aware that *Momon* was decided on November 16, 1999, and that Petitioner's trial was in February or March 2000. He admitted that the trial court did not voir dire Petitioner about his understanding of his right to testify.

Petitioner's appellate counsel from the appeal of his second sentencing also testified at the hearing. Appellate counsel did not challenge the application of the two enhancement factors based on *Blakely v. Washington*, 542 U.S. 296 (2004), because Petitioner was sentenced below mid-range of his sentencing range. Therefore, appellate counsel stated, *Blakely* did not apply because he did not believe that the trial court had enhanced Petitioner's sentence because it was below the mid-range.

On January 22, 2009, the post-conviction court filed a written order denying Petitioner's petition for post-conviction relief. Petitioner filed a timely notice of appeal.

## ANALYSIS

Petitioner argues that he was afforded ineffective assistance of counsel and, therefore, the post-conviction court should have granted his petition for post-conviction relief. The State argues that the post-conviction court's denial of the petition was correct.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins*, 911 S.W.2d at 347. This Court may not

second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner argues that trial counsel's representation was deficient for several reasons.

### *Momon* **Issue**

Petitioner's first argument is that trial counsel was ineffective in refusing to allow Petitioner to testify at trial and failing to conduct a "*Momon* hearing." The State admits that trial counsel was ineffective in failing to request a *Momon* hearing. However, the State argues that Petitioner has not demonstrated that he was prejudiced by this failure.

We initially point out that Petitioner is correct in restricting his argument to ineffective assistance of counsel with respect to the *Momon* issue. Petitioner did not present this issue in either his motion for new trial or his direct appeal. A ground for post-conviction relief is waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g). Therefore, we can only review this issue in terms of whether Petitioner's trial counsel was ineffective for not insisting on a *Momon* hearing.

The right of a criminal defendant to testify at trial is a fundamental constitutional right, which may only be personally waived by the defendant. *Momon v. State*, 18 S.W.3d 152, 161 (Tenn. 1999). "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 161-62 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). To ensure that the right to testify has been personally waived by the defendant, the *Momon* court directed trial courts in all future cases to follow procedural guidelines which call for defense counsel to request a jury-out hearing in the presence of the trial court to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. *Id.* at 163. At this hearing, which "shall be placed on the record," defense counsel must at a minimum show "that the defendant knows and understands" the following:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

*Id.* at 162. The mere failure of a trial court to follow these guidelines, however, is not enough to support the defendant's claim that he was deprived of his constitutional right to testify "if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." *Id.* at 163. A waiver of this right may not be presumed by a silent record. *Id.* at 162. Furthermore, even if the record is silent as to a personal waiver, to be successful in his challenge the defendant must prove that the error was not harmless beyond a reasonable doubt. *State v. Posey*, 99 S.W.3d 141, 149 (Tenn. Crim. App. 2002) (citing *Momon*, 18 S.W.3d at 166). When determining if the error was harmless beyond a reasonable doubt, the following factors should be considered: "(1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; and (4) the overall strength of the prosecution's case." *Id.*

In its order denying the petition, the post-conviction court addressed the *Momon* issue. The post-conviction court specifically stated that there was insufficient evidence in the record to support the conclusion that Petitioner personally waived his right to testify. The post-conviction court noted that the *Momon* case had been filed a few months before Petitioner's trial and, therefore, the requirements set out in *Momon* were in effect at the time Petitioner was tried. The post-conviction court concluded that the failure to request such a hearing was deficient representation. The post-conviction court then went on to determine whether the failure to request the *Momon* hearing resulted in prejudice, the second prong required in ineffective assistance of counsel claims. The post-conviction court made the following findings:

The Court finds that the Petitioner testified that he wished to testify to explain that he was only participating in the escape because of his fear of Mr.

-9-

Van Ulzen. The Court also finds that Mr. [Van] Ulzen testified at trial that the Petitioner had no part in the planning of the escape and that he participated only "to ensure that nothing got out of hand". The Court finds that Mr. [Van] Ulzen's testimony was sufficient to convey to the jury the Petitioner's alleged hesitation to commit these acts and that the Petitioner's testimony on this point would have been unnecessarily duplicating. The Court also finds that the Petitioner testified that he wished to testify that he called the unit manager to warn her of the impending escape, but that this account was uncorroborated by any other admissible evidence. The Court also finds that the State submitted evidence at trial to demonstrate active participation in all phases of the escape, including physically assaulting and securing the [prison guards] and securing the escape and that this evidence was supported by numerous witnesses. The Court finds that the proposed testimony of the Petitioner was duplicating or otherwise uncorroborated and the effect of its exclusion on the Petitioner's verdict is harmless beyond a reasonable doubt.

The Court also gives credit to [trial counsel's] testimony concerning his conversations with the Petitioner. The court finds that [trial counsel's] practice, with regard to his criminal clients, was to make a recommendation about testifying but ultimately to leave the decision about whether to testify up to them. The Court finds that the evidence presented by the State at the Petitioner's trial demonstrated that the Petitioner's argument was primarily legal in nature – relying almost entirely on his Anthony defense – and that the Petitioner's testimony would not have contributed to this defense. The Court therefore finds that, while the waiver was not made explicit , the Petitioner and [trial counsel] had agreed that he should not testify. The Court finds that the Petitioner has failed to establish, by clear and convincing evidence, that he was prejudiced by [trial counsel's] omission.

Therefore, the post-conviction court concluded that the failure to conduct a *Momon* hearing was harmless beyond a reasonable doubt. We agree with the post-conviction court. The post-conviction court analyzed Petitioner's proposed testimony under the factors set out above to determine whether it was harmless error. We conclude the record on appeal demonstrates that : (1) Petitioner's testimony was not important to the defense case because of the *Anthony* defense; (2) in light of the co-defendant's testimony about Petitioner's lack of involvement in the planning, Petitioner's testimony would have been cumulative; (3) there was no corroborating evidence regarding Petitioner's assertion that he tried to alert a unit manager of the impending escape; and (4) the State's case was very strong with many witness to the incident. In our own review of the record we find evidence to support each of these

-10-

conclusions. Therefore, we too conclude that the failure to conduct a *Momon* hearing was harmless beyond a reasonable doubt. For this reason, we find that Petitioner suffered no prejudice resulting from trial counsel's ineffectiveness in failing to secure the *Momon* hearing. Petitioner has not met both *Strickland* prongs to be successful on this issue.

## Jury Instructions

Petitioner also argues that he was afforded ineffective assistance of counsel because trial counsel failed to request Pattern Jury Instruction 8.02 and an instruction on the elements of false imprisonment as a lesser included offense of aggravated kidnapping. Petitioner additionally argues that counsel was ineffective for failing to raise the issue in either the motion for new trial or on appeal.

### Aggravated Kidnapping

Petitioner was indicted for three counts of especially aggravated kidnapping under Tennessee Code Annotated section 39-13-305(a)(1) which requires that the kidnapping be "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." The trial court instructed the jury on the lesser included offenses of aggravated kidnapping, kidnapping and facilitation of especially aggravated kidnapping. Petitioner complains that the trial court did not instruct the jury on Pattern Jury Instruction 8.02 which is based upon aggravated kidnapping as defined in Tennessee Code Annotated section 39-13-304(a)(1) which states, "Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed: (1) To facilitate the commission of any felony or flight thereafter." The trial court's instruction on aggravated kidnapping was based upon Tennessee Code Annotated section 39-13-304(a)(5) which states, "Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed . . . (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon."

The State argues on appeal that aggravated kidnapping committed in order "to facilitate the commission of any felony or flight thereafter," Tennessee Code Annotated section 39-13-304(a)(1), is not a lesser included offense of especially aggravated kidnapping under the indictment based upon Tennessee Code Annotated section 39-13-305(a)(1), which defines especially aggravated kidnapping as "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, . . . ."

The test to determine whether an offense is a lesser included offense of the indicted offense was articulated in the supreme court decision of *State v. Burns*, 6 S.W.2d 453 (Tenn.

-11-

1999).  Under the *Burns* test, an offense is a lesser included offense of the greater indicted offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Id*. at 466-67.  Petitioner argues that the aggravated kidnapping instruction in question is a lesser included offense of especially aggravated kidnapping because it falls within (b)(2) under *Burns*.

Recently, our Court has addressed a similar issue.  In *Antonio L. Fuller v. State*, No. M2008-01421-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 842 (Tenn. Crim. App., at Nashville, Sept. 28, 2010), As in the case at hand, the petitioner was indicted for especially aggravated kidnapping accomplished with a deadly weapon as stated in Tennessee Code Annotated section 39-13-305(a)(1). *Antonio L. Fuller*, 2010 Tenn. Crim. App. LEXIS 842, at * 10.  The petitioner was found guilty of especially aggravated kidnapping at the conclusion of a jury trial.  *Id*. at *1.  The trial court instructed the jury on facilitation of especially aggravated kidnapping accomplished with a deadly weapon, aggravated kidnapping while defendant is in possession of a deadly weapon, and facilitation of aggravated kidnapping while defendant is in possession of a deadly weapon as lesser included offenses of especially aggravated kidnapping.  *Id*. at *11.  The petitioner argued that his trial counsel was ineffective for failing to request the same jury instruction in question here, i.e., aggravated kidnapping found at Tennessee Code Annotated section 39-13-304(a)(1) which is aggravated kidnapping defined as false imprisonment "to facilitate the commission of any felony or flight thereafter."  *Id*. This Court concluded that the petitioner was unable to prove prejudice even assuming that aggravated kidnapping under Tennessee Code Annotated section 39-13-304(a)(1) based upon

-12-

facilitation to commit a felony or flight thereafter, was a lesser included offense of especially aggravated kidnapping accomplished with a deadly weapon. We concluded that the petitioner could not show that he was prejudiced by failing to request the instruction because the jury had chosen to convict on the higher offense even after having been instructed on the other lesser included offenses.

The same situation is present in the facts at hand. The trial court instructed the jury on aggravated kidnapping while in possession of a deadly weapon at Tennessee Code Annotated section 39-13-304(a)(5). The jury chose to convict Petitioner of especially aggravated kidnapping accomplished with a deadly weapon. With regard to the difference between aggravated kidnapping while in possession of a deadly weapon and especially aggravated kidnapping accomplished with a deadly weapon, the Sentencing Commission Comments state the following:

> Subdivision (a)(5) punishes a kidnapping involving the possession or threatened use of a deadly weapon. For example, during the kidnapping, if the defendant had a deadly weapon in his or her pocket but did not mention or use it, or if he or she did not have a deadly weapon in his or her possession, but threatened the victim with the use of a deadly weapon, the offense would be punishable as an aggravated kidnapping under this section. If the defendant actually used a deadly weapon or used something other than a deadly weapon but convinced the victim that it was a deadly weapon, the offense would be punishable as an especially aggravated kidnapping under § 39-13-305(a)(1).

Clearly, the jury determined that Petitioner used a deadly weapon to accomplish the kidnapping. By choosing to convict Petitioner of the greater offense, the jury rejected the lesser offense and demonstrated that it would not have convicted Petitioner for aggravated kidnapping to facilitate a felony or flight, which does not require the use of a deadly weapon. *See State v. Williams*, 977 S.W.2d 101, 107 (Tenn. 1998). For this reason, Petitioner is unable to meet both prongs under *Strickland* because he is unable show that trial counsel's failure to request an instruction has prejudiced him.

### False Imprisonment

Petitioner also argues that trial counsel was ineffective for failing to request an instruction on false imprisonment as a lesser included offense of especially aggravated kidnapping. As stated above, the trial court instructed on several other lesser included offenses but did not instruct on false imprisonment.

Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." *Page*, 184 S.W.3d at 229.

An instruction on a lesser included offense must be given if the trial court, viewing the evidence most favorably to the existence of the lesser included offense, concludes (a) that "evidence exists that reasonable minds could accept as to the lesser-included offense," and (b) that the evidence "is legally sufficient to support a conviction for the lesser-included offense." *Id.* at 469. "If a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether the evidence supports it." *Id.* at 467. The failure to instruct the jury on lesser included offenses requires a reversal for a new trial unless a reviewing court determines that the error was harmless beyond a reasonable doubt. *State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001). In making this determination, the reviewing court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002).

Our supreme court stated in *State v. Allen*, 69 S.W.3d 181 (Tenn. 2002):

When a lesser-included offense instruction is improperly omitted, we conclude that the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. *See Bowles*, 52 S.W.3d at 77. In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury. A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. *Williams*, 977 S.W.2d at 106.

69 S.W.3d at 190.

Our courts have already determined that false imprisonment is a lesser included offense of especially aggravated kidnapping. *See, e.g.*, *State v. Gerald L. "Pete" Shirley*, No. E2002-03096-CCA-R3-CD, 2004 WL 34506, at *20 (Tenn. Crim. App., at Knoxville, Jan. 7, 2004); *State v. Nesha Newsome*, No. W2002-01306-CCA-R3-CD, 2003 WL 23100597, *6 (Tenn. Crim. App., at Jackson, Dec. 30, 2003), *perm. app. denied* (Tenn. May 24, 2004); *State v. Evangeline Combs & Joseph D. Combs*, Nos. E2000-02801-CCA-R3-CD, E2000-2800-CCA-R3-CD, 2002 WL 31118329, *60 (Tenn. Crim. App., at Knoxville, Sept. 25, 2002), *perm. app. denied* (Tenn. Jan. 27, 2003). For this reason we must conclude that trial counsel's failure to request an instruction for false imprisonment is deficient representation. However, our inquiry does not end there. We must also determine if this instance of ineffectiveness prejudiced Petitioner.

As stated above, the failure to instruct on a lesser included is subject to harmless error analysis. Our supreme court has stated, "A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses." *Allen*, 69 S.W.3d at 190. In the case at hand, the jury convicted Petitioner of especially aggravated kidnapping even though they were also instructed on aggravated kidnapping, kidnapping, and facilitation of a felony-especially aggravated kidnapping. Clearly, the jury determined Petitioner to be guilty of especially aggravated kidnapping and rejected all other lesser included offenses. Therefore, we conclude that the failure to instruct on false imprisonment was harmless error. For this reason, we find that Petitioner was not subject to prejudice as a result of trial counsel's failure to request an instruction for false imprisonment.

<u>Natural and Probable Consequences Jury Charge</u>

Petitioner's next argument is that he was afforded ineffective assistance of counsel because trial counsel failed to request a jury instruction on the natural and probable consequences rule. At trial, Petitioner was convicted of three counts of aggravated assault by use or display of a deadly weapon, in this case, a knife, as stated in the indictment. According to Petitioner, no witness testified that he saw Petitioner with a knife. Therefore, he concludes Petitioner's convictions for aggravated assault were based on the theory of criminal responsibility.

Our supreme court analyzed the natural and probable consequences rule in *State v. Richmond*, 90 S.W3d 648 (Tenn. 2002). The court stated the following:

> The natural and probable consequences rule arose as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime. *See State v. Carson*, 950 S.W.2d 951 (Tenn. 1997). We have noted on several occasions that "criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999).

*Richmond*, 90 S.W.3d at 654. In 1997, our supreme court filed *State v. Carson*, 950 S.W.2d 951 (Tenn. 1997). In *Carson*, our supreme court determined that our legislature intended the natural and probable consequences rule derived from the common law to apply to the criminal responsibility statute included in our criminal code. *Id.* at 655 (citing *Carson*, 950 S.W.2d at 955.)

Subsequently, our supreme court revisited the natural and probable consequences rule in *State v. Howard*, 30 S.W.3d 271 (Tenn. 2000). In *Howard*, our supreme court held that "the purpose of the natural and probable consequences rule is to hold aiders and abettors 'responsible for the criminal harms they have naturally, probably and foreseeably put into motion.'" *Richmond*, 90 S.W.3d at 656 (quoting *Howard*, 30 S.W.3d at 276). In its analysis of *Howard*, our supreme court stated the following:

> Clearly, *Howard* stands for the proposition that the natural and probable consequences rule is "an essential element that the State must prove beyond a reasonable doubt" when seeking a conviction based on the theory of criminal responsibility. *Howard*, 30 S.W.3d at 277 (Tenn. 2000). The State may satisfy

-16-

this burden only by strict compliance with the three-pronged test as established
by *Howard*.

*Richmond*, 90 S.W.3d at 657. The holding in *Howard* was that "the State must prove beyond
a reasonable doubt and the jury must find: '(1) the elements of the crime or crimes that
accompanied the target crime; (2) the defendant was criminally responsible pursuant to
Tennessee Code Annotated section 39-11-402; and, (3) that the other crimes that were
committed were the natural and probable consequences of the target crime.'" *Id.* (quoting
*Howard*, 30 S.W.3d at 276).

The post-conviction court rejected Petitioner's arguments as to ineffective assistance
of counsel based upon the failure to request an instruction including the natural and probable
consequences rule. The post-conviction court initially found that Petitioner could have been
found guilty of aggravated assault as either a principal or under the theory of criminal
responsibility. The post-conviction court referred to the fact presented at trial that Petitioner
was in possession of a stun gun, and it was known by at least one officer that he had the stun
gun. The post-conviction court held that a stun gun could be considered a deadly weapon.
However, the indictment specifically states that the deadly weapon in question was a knife.
Therefore, Petitioner's possession of the stun gun could not support his conviction for the
three counts of aggravated assault under the indictment. The post-conviction court also
pointed out that two "shank knives" were found at a later time and that the jury could have
determined that Petitioner had used one of the knives. We agree with the post-conviction
court that it is reasonable to assume that the jury could have determined that one of the shank
knives found after the escape was used by Petitioner. However, the fact remains that none
of the victims testified that Petitioner held a weapon. In addition, the jury was instructed on
criminal responsibility. Therefore, we conclude that we must address the issue in terms of
the failure to instruct on the natural and probable consequences rule.

With respect to conviction under the theory of criminal responsibility, the post-
conviction court set forth the following findings:

> The Petitioner contends that, when a defendant is convicted under criminal
> responsibility, the trial court is required to submit a jury instruction regarding
> the natural and probable consequences rule. In support of the contention, the
> Petitioner cites State v. Howard, 30 S.W.3d 271 (Tenn. 2000), – a decision that
> was handed down after the Petitioner's trial but before his motion for new trial
> was submitted. The Court finds that the State presented sufficient evidence to
> demonstrate that the Petitioner's actions were done in furtherance of the

-17-

escape and that he acted and assisted in the aggravated assaults and especially aggravated kidnappings, and that he benefitted from these crimes, which permitted him to escape undetected. The Court also finds that the Petitioner's trial was concluded months before the Howard case was handed down and that the Petitioner has not demonstrated that Howard would be retroactive to the Petitioner's case, thereby requiring the Court to include this instruction. Even if the Court were required to include this instruction, however, the Court also finds beyond a reasonable doubt that these crimes flowed as natural and probable consequences of the felony escape and so the failure to include such an instruction would be harmless error.

Petitioner argues that trial counsel was ineffective for not requesting an instruction for the natural and probable consequences rule at trial, for not raising the issue at his motion for new trial, and for not raising the issue on appeal. Petitioner admits that his trial was held in March 2000 and that *Howard* was decided several months later in July 2000. Nevertheless, he argues that *Howard* was merely a continuation of *Carson*. He states that "while not spelled out as clearly in Carson as it was in Howard, the duty to charge the natural and probable consequence rule is required to be charged in cases where the State is relying on criminal responsibility as the crutch for conviction under a particular statute." In the alternative, he argues that the rule set out in *Howard* should apply to his case because his case was in the process of direct review.

This Court has addressed a similar issue in *Darrell Jennings v. State*, No. W2007-01087-CCA-R3-PC, 2009 WL 3400701 (Tenn. Crim. App., at Jackson, Oct. 21, 2009), *perm. app. denied*, (Tenn. Apr. 14, 2010). In *Darrell Jennings*, the defendant was convicted of felony murder and sentenced to life imprisonment. 2009 WL 3400701, at *2. The conviction and sentence were affirmed on appeal. *Id.* The supreme court's decision in *Howard* was handed down while the defendant's case was on direct appeal. *Id.* at *3. In his petition for post-conviction relief, the defendant argued that trial counsel was ineffective for failing to request an instruction on the natural and probable consequences rule as set out in *Howard*. *Id.* at *2. This Court determined that trial counsel had not rendered ineffective assistance of counsel and stated the following reasoning:

Given the timing of the *Howard* opinion in relation to the petitioner's trial and direct appeal, we cannot conclude that counsel was deficient for failing to request a natural and probable consequences jury instruction regarding the charged offense of first degree murder. Obviously, as the *Howard* opinion was released during the pendency of the petitioner's first tier

appellate review, counsel could have submitted the *Howard* opinion to this court as supplemental authority. Counsel admittedly did not do so. However, counsel raised the issue of a natural and probable consequences instruction in his Rule 11 application for permission to appeal. We conclude that, under the facts of this case, counsel did not act "'outside the wide range of professionally competent assistance.'" *Torrey Lyonel Frazier v. State*, No. E2007 -02518-CCA-R3-PC, 2009 WL 774482, at *5 (Tenn. Crim. App. at Knoxville, Mar. 25, 2009) (quoting *Strickland*, 466 U.S. at 690), *perm. to appeal granted*, (Tenn., Aug. 17, 2009).

*Id.* at *7.

Applying this reasoning to the case at hand, it is obvious that the trial occurred before *Howard* was released. Therefore, as in *Darrell Jennings*, we conclude that trial counsel was not ineffective in failing to request a jury instruction on the natural and probable consequences rule. With regard to the failure to raise the issue in the motion for new trial or in the direct appeal, we conclude that trial counsel should have raised the issue. Therefore, we move on to the second *Strickland* prong, whether Petitioner was prejudiced by trial counsel's failure to raise the issue. To determine whether or not Petitioner was prejudiced we must determined whether the trial court's failure to instruct the jury on the natural and probable consequences rule was harmless error.

In *Richmond*, our supreme court set out the following analysis with regard to harmless error in the context of the failure to instruct on the natural and probable consequences rule:

We have previously held that a trial court's failure to charge the natural and probable consequences rule when warranted by the evidence is constitutional error. *See Howard*, 30 S.W.3d at 277 n.6. For such error to be harmless, the State has the burden of establishing beyond a reasonable doubt that the error did not affect the outcome of the trial. *See id.* (citing *Neder v. U.S.*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed.2d 35 (1999)). We reiterate that it is the jury's role as fact-finder to decide whether the State has proven all essential elements of an offense beyond a reasonable doubt. *See Howard*, 30 S.W.3d at 277. Yet, the United States Supreme Court made clear in *Neder* that when a jury's verdict "necessarily included a finding" on the omitted element, the error may be harmless. 27 U.S. 1, 16, 2 Petitioner. 1, 7 L. Ed. 327 (1829) (Stevens, J., concurring). *Neder* further clarified that this type of harmless error is not limited to situations wherein the jury's verdict necessarily included

a finding on the omitted element. Thus, it is proper for a reviewing court to make a thorough examination of the record to determine if, beyond a reasonable doubt, the jury verdict would have been the same absent the error. *See Allen*, 69 S.W.3d at 190. A reviewing court must ask whether the record contains evidence that could rationally lead to a contrary finding by the jury with respect to the omitted element. *See id.* If, after viewing the evidence in the light most favorable to the State, there is no rational basis for a contrary conclusion by the trier of fact, then the omitted element constitutes harmless error.

*Richmond*, 90 S.W.3d 657-658 (footnote omitted).

As stated above, the natural and probable consequences rule is an essential element. In *Howard*, our supreme court stated that the State must prove and a jury must find the following three prongs when instructed on the natural and probable consequences rule, "(1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and (3) that the other crimes that were committed were natural and probable consequences of the target crime." 30 S.W.3d at 276. The jury found the first two prongs, that the elements of the offense were present and that Petitioner was criminally responsible. We must determine whether the facts, when taken in a light most favorable to the State, lead to the conclusion that aggravated assault would be a natural, probable and foreseeable crime when committing an escape.

We conclude that aggravated assault would be a natural, probable and foreseeable criminal act in an escape. Petitioner and his co-defendant were being held at Riverbend. The inmates at Riverbend are supervised by prison guards. In order to escape from the prison, an inmate would have to anticipate that they would have to overpower the guards at some point in order to make their way out of the prison. Therefore, we conclude that the outcome to Petitioner's case would not have been any different had the trial court instructed the jury on the natural and probable consequences rule. For this reason, we find that the lack of the instruction is harmless error and, therefore, Petitioner has suffered no prejudice. Petitioner has not met the second prong required in *Strickland*. Therefore, Petitioner cannot be successful on this issue.

## Stipulation of Felony

Before trial, trial counsel filed a motion in limine to stipulate to the offense for which Petitioner was in prison at the time of the escape. The trial court denied the motion.

-20-

Petitioner's next issue is that trial counsel was ineffective for failing to raise the issue of stipulation of the offense in either the motion for new trial or on direct appeal. The State argues that this Court addressed this issue on direct appeal.

Under Tennessee Code Annotated section 40-30-206, the trial court shall enter an order dismissing the petition for post-conviction relief if, inter alia, it appears the ground asserted for relief has been previously determined on the merits by a court of competent jurisdiction. T.C.A. § 40-30-206(h).

In his first direct appeal, Petitioner's counsel raised the issue "that the trial court should have allowed the State to prove no more than that [the defendants] were each in prison while serving a sentence for a felony . . . ." *State v. Billy J. Coffelt*, 2003 WL 22116628, at \*5. This Court concluded that the trial court erred in allowing the State to introduce proof as to the underlying offenses, but the error was harmless and "had no impact whatsoever on the jury's verdict." *Id*. at \*6. A court of competent jurisdiction has previously determined that the introduction of Petitioner's offense for which he was incarcerated did not affect the jury verdict. Petitioner is unable to prove prejudice because this issue has already been held to be harmless. Petitioner cannot be successful on this issue.

## Severance

Petitioner argues that he was afforded ineffective assistance of counsel because trial counsel failed to move for severance after the trial court granted the co-defendant's motion to suppress Petitioner's statement that he attempted to alert the unit manager of the escape and after his co-defendant pled guilty to escape in the presence of the jury. The State argues that both issues are without merit.

### Following Motion to Suppress

As stated above, prior to trial, the co-defendant filed a motion to suppress Petitioner's statement that he attempted to alert the unit manager at Riverbend about the escape. The trial court granted the motion to suppress the statement. Petitioner argues that trial counsel's failure to move for severance so that the statement could be entered in a trial solely of Petitioner was ineffective assistance of counsel. The post-conviction court found that the suppression motion prevented the entry of the statements into evidence but did not prevent Petitioner from testifying about calling the unit manager. The post-conviction court stated that trial counsel reserves the decision about his clients testifying until the close of the State's proof. Therefore, at the time the trial court granted the motion, trial counsel still considered Petitioner's testifying as a possibility. For this reason, the trial court determined that trial

-21-

counsel's representation was not deficient "because he could have gotten the same evidence admitted in another manner."

We agree with the trial court that trial counsel's representation was not deficient in failing to ask for a severance to enable the entry of a self-serving statement into evidence. Even if Petitioner did not testify about this call to the unit manager, he could have called the manager to testify about the call. Yet, he raises no claim about counsel's failure to call the manager, and there is no testimony from the manager at the post-conviction hearing. We additionally point out, that even if we determined that trial counsel was deficient, Petitioner would be unable to prove that the action was so prejudicial that it affected the outcome of the trial. Even taking the statement as true that Petitioner called the unit manager, the statement is not enough in and of itself to counteract the overwhelming evidence presented by the State of the testimony by the officers of Petitioner's direct involvement in their kidnapping and the fact that Petitioner did indeed escape as a result of both his and his co-defendant's action. In addition, Petitioner's co-defendant testified that Petitioner had no hand in the planning and that Petitioner unwillingly participated in the escape. Therefore, evidence that was even more favorable to Petitioner was offered to the jury and ultimately rejected.

Therefore, we conclude that Petitioner would be unable to meet both prongs under *Strickland* and cannot be successful on this issue.

## Co-defendant's Guilty Plea

Petitioner also argues that trial counsel was ineffective in failing to ask for a severance following his co-defendant's entry, immediately before trial and in the presence of the jury, of a plea of guilty to escape.

Trial counsel testified that his strategy was to focus on the aggravated assault and especially aggravated kidnapping charges. He stated that his plan was to point out to the jury that the officers were not in danger and they were detained for a short period of time. Trial counsel wanted the jury to see that the real offense was the escape and not the other offenses charged. He also attempted to convince Petitioner to plead guilty to escape. Trial counsel stated that he did not consider the co-defendant's guilty plea to be prejudicial to Petitioner's case.

As stated above, we are not to second guess a reasonably based trial strategy. In this case, trial counsel was presented with overwhelming evidence of Petitioner's participation in the escape. In order to accomplish the escape, Petitioner and his co-defendant were required to commit offenses that carried much more serious punishment that the escape itself. We conclude that trial counsel's strategy to try to convince the jury that the real offense was

-22-

escape was a sound tactical decision. We cannot in this case say that trial counsel's unsuccessful strategy was tantamount to ineffective assistance of counsel. Therefore, Petitioner is unable to meet the first *Strickland* prong.

## **CONCLUSION**

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____

JERRY L. SMITH, JUDGE