IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 6, 2024

**NICHOLAS D. BROOKS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-05802    Chris Craft, Judge**

_____

**No. W2023-00824-CCA-R3-PC**

_____

The Petitioner, Nicholas D. Brooks, appeals the Shelby County Criminal Court's denial of his post-conviction petition, seeking relief from his convictions for two counts of first degree felony murder, one count of especially aggravated robbery, one count of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony. On appeal, the Petitioner contends that he received ineffective assistance of trial and appellate counsel. Based on our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Nicholas D. Brooks.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Steve Mulroy, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**[1]

_____

[1] We note that the Petitioner's brief fails to comply with Rule 27(a)(6), Tennessee Rules of Appellate Procedure, which requires that an appellant's brief contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record[.]" The statement of facts in the Petitioner's brief does not contain any evidence presented at his trial or post-conviction evidentiary hearing.

In December 2016, a group of male intruders, one of whom was the Petitioner, entered the home of Christopher Waters, who was a thirty-year-old orchestra teacher in the Memphis City School System. *See State v. Brooks*, No. W2019-01802-CCA-R3-CD, 2020 WL 7252035, at *1 (Tenn. Crim. App. Dec. 9, 2020), *perm. app. denied* (Tenn. Apr. 8, 2021). They robbed the victim, shot him, and stabbed him. *See id*. at *11. The Shelby County Grand Jury indicted the Petitioner for first degree felony murder committed during the perpetration of robbery, first degree felony murder committed during the perpetration of burglary, especially aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony, and a jury convicted him of the offenses. *Id*. at *1. The trial court merged the murder convictions and imposed an effective sentence of life plus twelve years. *Id*. at *5.

On direct appeal of the Petitioner's convictions, he claimed that the evidence was insufficient to support the convictions, that the trial court erred by admitting a statement made by his mother into evidence, and that the trial court improperly instructed the jury on the theory of criminal responsibility. *See id*. at *6-11. This court found the evidence sufficient, summarizing the proof as follows:

> The evidence, viewed in the light most favorable to the State, shows that the [Petitioner] knew the victim personally. The [Petitioner] admitted telling his accomplices about the victim when they asked where they could get money. Together with the other men, the [Petitioner] planned to go to the victim's house, gain entry, and take some of the victim's things to sell. Because of their personal relationship, the victim invited the [Petitioner] into his home on the night of December 8, 2016. The [Petitioner] was aware that his accomplices were armed with weapons prior to entering the victim's residence. Inside the victim's residence, the men ransacked it of its contents and stole a television, multiple electronics, and the victim's wallet, watch, and other jewelry. During the robbery, the victim was shot and killed; he was also stabbed multiple times. Following the shooting, the [Petitioner] took the victim's vehicle, along with other items from inside the victim's home, and left the scene driving the victim's car. He returned to the victim's home several times during the hours after the victim was shot. The [Petitioner] later tried to pass off the vehicle as his own new car. This is sufficient evidence from which a jury could rationally conclude that the [Petitioner] was criminally responsible for the victim's murder, which occurred during the commission of the especially aggravated robbery and aggravated burglary[,] and thus is sufficient to support his convictions.

*Id*. at *11.

Regarding the statement made by the Petitioner's mother, the Petitioner's mother asked him during a recorded jailhouse telephone call, "'Why are there photos of that guy, dead on your phone?'" *Id.* at *6. The Petitioner responded, "'What are you talking about, where did you see it, exactly?'" *Id.* At trial, the Petitioner objected to the State's playing his mother's statement for the jury and argued that "his mother was not available for cross-examination regarding her statement, and thus, it was inadmissible hearsay." *Id.* The trial court concluded that the statement was not hearsay because it was not being offered for the truth of the matter asserted but was being offered to show the Petitioner's state of mind and whether or not he thought the statement was true. *Id.* at *7. The trial court also concluded that any Sixth Amendment confrontation problem could be cured by the Petitioner's calling his mother, who was present in the courtroom during the trial, to testify. *Id.* This court agreed that the statement was not hearsay because (1) the statement was a question, not an assertion, and (2) the statement was not offered to prove the truth of the matter asserted but to provide context to the Petitioner's portion of the telephone call. *Id.* at *7.

As to the criminal responsibility instruction, the trial court initially gave the jury an instruction on the "old version" of criminal responsibility. *Id.* at *9. The next day, the trial court discovered its mistake, notified the parties, and advised them that it was going to instruct the jury on the recently-updated version of criminal responsibility. *Id.* Trial counsel for the Petitioner objected to the trial court's reinstructing the jury and argued that it would "'highlight'" criminal responsibility and be unfair to the Petitioner. *Id.* The trial court overruled the objection, concluding that it was required to provide the jury with a complete and proper charge of the law. *Id.* The trial court then had the jurors return to the courtroom and told them to replace the pages of the jury charge containing the old version of the instruction with the new version. *Id.* On appeal, this court noted that the Petitioner failed to include the old version of the instruction in the appellate record, which precluded this court from comparing the two instructions. *Id.* Regardless, this court held that the trial court did not err because the trial court had a duty to instruct the jury on the updated law. *Id.*

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, alleging that he received the ineffective assistance of counsel, in pertinent part, because counsel failed to include the old version of the criminal responsibility instruction in the appellate record on direct appeal, which waived the issue. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition, also alleging that trial counsel was ineffective for failing to suppress the Petitioner's mother's statement and for failing to review and timely object to the jury instruction on criminal responsibility.

The post-conviction court held an evidentiary hearing on March 3, 2023. During the hearing, trial counsel testified for the Petitioner that he represented the Petitioner at trial

but not on direct appeal. The Petitioner was in custody while he was awaiting trial, and trial counsel met with him to discuss the case and review discovery materials. During the final jury charge, the trial court instructed the jury on a version of criminal responsibility that recently had been changed. The trial court "caught" the error the next day and informed the parties that the court was going to give the correct written instruction to the jury. Trial counsel objected to the trial court's providing the new instruction to the jury because he thought doing so would emphasize the Petitioner's criminal responsibility for the crimes. The trial court overruled the objection because the court thought it had a legal duty to provide the correct jury instruction. The jurors returned to the courtroom, and the trial court told them to "rip that section out." The trial court gave the jury a copy of the new criminal responsibility instruction, read the instruction aloud, and told the jury to follow the instruction. Another attorney from trial counsel's office represented the Petitioner on direct appeal, and appellate counsel raised the jury instruction issue. However, appellate counsel did not include the old version of the instruction in the appellate record, so this court ruled the issue was waived.

Trial counsel acknowledged that the jailhouse telephone conversation between the Petitioner and the Petitioner's mother was "strong" evidence for the State. The prosecutor wanted to play the Petitioner's mother's statement for the jury, but trial counsel objected because the prosecutor did not call the Petitioner's mother to testify. As a result, trial counsel could not cross-examine her about her statement. The trial court ruled that the statement was not hearsay and noted that the defense could call the Petitioner's mother to testify. Trial counsel said that the Petitioner's mother was in the courtroom during the trial and that "she was definitely available if I wanted to put a subpoena on her for her to come testify." Trial counsel stated that on direct appeal of the issue, this court "kind of [went] back and forth" but ultimately ruled the statement was admissible.

On cross-examination, trial counsel testified that he had been practicing law twenty-two years and that his practice focused entirely on criminal law. Trial counsel met with the Petitioner to discuss the case, and the Petitioner was very nice, very polite, and smart. Trial counsel had handled first degree murder cases previously, and the Petitioner's case was not complex. Trial counsel explained that after the victim's death, the Petitioner drove by the victim's house in the victim's distinctive orange Mustang. The police were present, stopped the Petitioner, and arrested him. Trial counsel acknowledged that he objected at trial to the criminal responsibility instruction and the Petitioner's mother's statement. On redirect examination, trial counsel clarified that he objected to the trial court's reinstructing the jury on criminal responsibility; he did not object to the old version of the instruction.

The Petitioner testified that trial counsel met with him before trial and that they discussed the amount of his bond. They did not talk about his upcoming trial, and the Petitioner did not think trial counsel prepared him adequately for trial. Trial counsel and

the Petitioner never discussed the Petitioner's mother's statement. The Petitioner did not know the State was going to introduce the statement into evidence, but trial counsel objected to the statement. Post-conviction counsel asked the Petitioner, "Is there anything that you think he should have done that could have prevented that statement from coming in?" The Petitioner responded, "[N]o, not really. I mean, . . . he did as much as he was able to do, I believe[.]" The Petitioner said he also did not know the trial court was going to instruct the jury on criminal responsibility.

On cross-examination, the Petitioner estimated that trial counsel met with him less than five times. They did not discuss the charges or his trial. Trial counsel told the Petitioner that the Petitioner could receive a life sentence, but trial counsel did not tell him about other possible sentences. No one consulted with the Petitioner about the direct appeal of his convictions. He said that if he had been consulted, he could have recognized errors and could have attempted to correct those errors.

On June 5, 2023, the post-conviction court, which also presided over the Petitioner's trial, entered a written order denying the petition. In the order, the post-conviction court noted that trial counsel "strongly" objected to the State's playing the jailhouse telephone call on the basis of inadmissible hearsay. However, the trial court concluded, and this court agreed, that the Petitioner's mother's statement was not hearsay because it was not offered to prove the truth of the matter asserted but to provide context. The post-conviction court recalled that the Petitioner could have called his mother to testify at any time and that the Petitioner did not offer any proof at the evidentiary hearing as to what more trial counsel could have done to prevent his mother's statement from being admitted into evidence. The post-conviction court concluded that the Petitioner failed to show trial counsel was deficient on this issue.

Addressing the jury instruction on criminal responsibility, the post-conviction court first noted that the Petitioner provided the post-conviction court with a transcript of the jury instructions that initially were read to the jury but that were omitted from the direct appeal record. The post-conviction court then recounted as follows: The trial court initially read the pattern instruction on criminal responsibility that included a paragraph on the "Natural and Probable Consequences Rule" promulgated by *State v. Howard*, 30 S.W.3d 271 (Tenn. 2000). Subsequently, the pattern instruction was changed pursuant to this court's holding in *State v. Winters*, 137 S.W.3d 641, 659 (Tenn. Crim. App. 2003). The trial court discovered that it mistakenly had read the first instruction to the jury. The trial court provided the second instruction to the jurors and read the second instruction aloud but did not explain any changes in the instruction "so as not to draw any particular emphasis to that change." Trial counsel objected to the trial court's providing the second instruction to the jury, but the trial court overruled the objection because the second instruction was a correct statement of the law. The post-conviction court concluded that the Petitioner failed

to show that trial counsel was deficient or that the Petitioner was prejudiced by any deficiency. Accordingly, the post-conviction court denied the petition for post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to notice that the jury received an "outdated" jury instruction on criminal responsibility, which resulted in the trial court's having to read the updated version of the instruction to the jury; because appellate counsel failed to include the outdated instruction in the appellate record, which resulted in waiver of the issue on direct appeal; and because trial counsel objected "under the wrong basis" to suppress the recording of his mother, which resulted in the recording being played for the jury, and failed to rehabilitate the witness. The State argues that the post-conviction court properly denied the petition. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *Id.* (first citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) and then citing *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.* (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Regarding the jury instruction on criminal responsibility, a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). The Petitioner acknowledges that the second jury instruction was the correct statement of the law but contends that providing the second instruction to the jury created an undue emphasis on criminal responsibility. In denying relief on this issue, the post-conviction court found that trial counsel objected to the second instruction and that the Petitioner was not prejudiced because the trial court did not point out any differences between the first and second instructions to the jury. The record supports the post-conviction court's findings and conclusions on this issue.

As for appellate counsel's failure to include the first instruction in the record on direct appeal of the Petitioner's convictions, appellate counsel did not testify at the evidentiary hearing, and the post-conviction court did not address the issue in its order denying relief. In any event, the Petitioner contends that he was prejudiced by appellate counsel's deficient performance because this court deemed the issue waived. We disagree. This court stated in its direct appeal opinion that the Petitioner's failure to include the first instruction in the appellate record precluded "our review of the difference in the old versus new criminal responsibility instruction." *Brooks*, 2020 WL 7252035, at *9. This court then stated:

> However, in our view, by issuing the corrected instruction and thus ensuring that the jury was instructed properly and with updated law, the trial court performed its duty. "To issue an erroneous instruction to the jury would, as we have said, "mislead[ ] the jury as to the applicable law" and result in prejudicial error. The proper way to correct a mistake in the general charge is to give an additional instruction, which the trial court properly did." *See* [*State v. Cozart*, 54 S.W.3d 242, 245 (Tenn. 2001)]. We find no error, and the [Petitioner] is not entitled to relief.

Therefore, this court addressed the issue on the merits and found that the trial court did not err. Accordingly, we conclude that the Petitioner has failed to show that he was prejudiced by appellate counsel's failure to include the old version of the instruction in the record on appeal.

Finally, as to the Petitioner's mother's statement being introduced into evidence, the Petitioner claims that trial counsel should not have argued that the Petitioner's mother was unavailable and that trial counsel should have called her to the stand to "rehabilitate" her damaging statement about photographs of the dead victim being on his telephone. The post-conviction court found that trial counsel objected to the statement at trial based on hearsay and concluded that the Petitioner was not entitled to relief because he did not present any additional basis at the evidentiary hearing for keeping the statement from being admitted into evidence. Again, the record supports the findings and conclusions of the post-conviction court. Moreover, although the Petitioner now claims that trial counsel should have rehabilitated the witness, the Petitioner did not ask trial counsel at the evidentiary hearing why trial counsel did not call her to testify. The Petitioner also did not have the witness testify at the hearing. In order "[t]o succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical

evidence which inured to the prejudice of the petitioner." *Id.* (quoting *Black*,794 S.W.2d at 757). Thus, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to show he received the ineffective assistance of counsel.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
JOHN W. CAMPBELL, SR., JUDGE